Claire P. EGAN, Plaintiff,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 45985.

United States District Court
N. D. California.

Jan. 18, 1968.

J. A. Pardini, Elda Granelli and Julian Pardini, San Francisco, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., Sheldon Deutsch, Asst. U. S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

WEIGEL, District Judge.

This is an action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1964), to review the denial, by the Secretary of Health, Education and Welfare, of an application for a period of disability and disability insurance benefits. Sections 216 and 223 of the Social Security Act, 42 U.S.C. §§ 416, 423 (Supp. II, 1967).

Plaintiff first filed an application for disability benefits under the Act on November 22, 1961. She pursued the application through administrative channels, but did not appeal its denial to the district court. Thus any claim of disability benefits prior to February 22, 1962—the last effective date of the first application (TR. 12)—is not now reviewable. See Hobby v. Hodges, 215 F.2d 754 (10th Cir. 1954); 42 U.S.C. § 405(g) (1964). Plaintiff does not contend otherwise.

The application presently before the court was filed on October 20, 1964. On February 4, 1966, plaintiff was accorded a hearing, and the examiner's decision was filed, denying relief, on June 28, 1966. The decision was affirmed by the Appeal Council on October 13, 1966.

Plaintiff had filed for a period of disability under section 216 of the Act and for disability insurance benefits under section 223 of the Act. In each section, disability is defined as:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months * * *. 42 U.S.C. §§ 416

(i) (1) (A), 423 (c) (2) (A) (Supp. II, 1967).[1]

In her application, plaintiff alleged disability due to arthritis, a circulatory problem in her left leg—described at the hearing as post-phlebitis syndrome—psoriasis, and bursitis in her right shoulder. (TR. 97.) Plaintiff was 49 years old at the time of her application. At the hearing, plaintiff stated that her various ailments, especially her circulatory problem, caused her a great deal of pain whenever she attempted to exert herself. She stated that she could not keep her left leg in a normal position for more than 15–20 minutes at a time. At all other times, the leg had to be elevated. (TR. 30–93.) Nonetheless, the hearing examiner found that claimant was not disabled within the meaning of the Act in that she could engage in certain light work and that such light work would constitute "substantial gainful activity." The decision of the hearing examiner became the final decision of the defendant in this case when plaintiff's administrative appeal was unsuccessful. (TR. 1.)

■ The determination that plaintiff was not disabled within the meaning of the Act cannot stand upon the present record. To begin, the law is clear that once an applicant has demonstrated her inability to engage in her life's work—in the instant proceeding, nursing—the hearing examiner must make express findings as to what the applicant can do and what employment opportunities are available to one who can do only what the applicant can do. See, e. g., McMullen v. Celebrezze, 335 F.2d 811, 816 n. 6 (9th Cir. 1964), cert. denied, 382 U.S. 854, 86 S.Ct. 106, 15 L.Ed.2d 92 (1965); Graham v. Ribicoff, 295 F.2d 391 (9th Cir. 1961); Moke v. Celebrezze, 236 F.Supp. 174 (N.D.Cal. 1964.)

This two-pronged test was explained in the recent case of Gardner v. Smith, 368 F.2d 77 (5th Cir. 1966). In the course of examining the legislative history of sections 216 and 223, Judge Rives stated:

If a physical or mental impairment prevents one from obtaining a job, or from even being considered for the job, he is just as unable to engage in that activity as he would be were he unable to perform the work after he had obtained the employment. * * * Extended to its broadest reaches, the Secretary's position would nullify the purpose of the Act, for, unless the claimant is bedridden and incapable of any movement, there most probably is some work he physically could do, though there might be no likelihood that he could successfully compete for the job. Id. at 84.

■ In the instant case, the hearing examiner evidently found that the plaintiff was unable to engage in her prior occupation of nursing, as he considered only the possibility of her engaging in certain light work. However, the examiner did not take the next step—he failed to make explicit (or even implicit) findings that the light work which he said plaintiff could perform would be reasonably available to her. °

Moreover, it appears from the present record that any such finding would not have been supported by substantial evidence. Dr. Lloyd Meadow, a vocational consultant, testified at the hearing. (TR. 85–89.) Dr. Meadow stated in response to questioning by the examiner, that it was "conceivable" that plaintiff could perform certain light jobs which exist in the Bay Area. There was abso-

---

1. The definition was slightly different at the time plaintiff filed her application. At that time, the disability had "to be of long-continued and indefinite duration" 68 Stat. 1080 (1954), rather than the present 12 month standard. The hearing examiner, evidently unsure as to which definition was controlling, examined the application under both. (TR. 20.) While the change in the statute had no bearing on the examiner's decision, it is correct to point out that, since plaintiff's application was not finally determined at the time of the amendment, the amended version is controlling. Section 303(f) (1) of the Social Security Act. 79 Stat. 368 (1965).

lutely no testimony as to whether an employer would be willing to hire someone with Miss Egan's disabilities. Dr. Meadow stated further that Miss Egan could probably perform certain homebound work, but that such work was very difficult to obtain. (TR. 88.)

■ Thus defendant failed to carry his burden of proving that Bay Area jobs were reasonably available to plaintiff. This burden arose after plaintiff demonstrated that she could no longer engage in her previous occupation. See Randall v. Celebrezze, 239 F.Supp. 728, 732 (D.Idaho 1965), and cases collected therein.

There is an additional reason why the examiner's decision must be reversed. The examiner stated in his opinion that "if claimant is as limited in her movements as she claims and appears to be, there is no likelihood of her being able to engage in any substantial gainful activity. * * *" (TR. 18.) He never resolved this credibility issue, however, due to his belief that "a claimant's own statements of his or her symptoms of pain, discomfort and limitation of motion, unless supported by medical evidence, are not sufficient to establish a disability under the Social Security Act." (TR. 19.)

■ This is not a correct statement of the law. While there must be some medical evidence to support a claim of disability—and such evidence existed in this case—symptoms of pain, or inability to exert oneself, need not be objectively shown. In Mark v. Celebrezze, 348 F.2d 289, 292 (9th Cir. 1965), Judge Mathes stated that "subjective symptoms of pain are a significant factor to be weighed in determining whether there exists 'disability' as defined in the Act." In Goodwin v. Gardner, 250 F.Supp. 454 (N.D.Cal.1966), Chief Judge Harris noted that the examiner must make specific findings as to the credibility of complaints of pain. To the same

effect is Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962) (pain and inability to exert oneself).

In this regard, it is noteworthy that claimant's allegations of pain and inability to exert herself were supported by letters from various friends who helped her with daily activities. The allegations were in no way rebutted by the defendant; on the contrary, a psychiatrist who examined plaintiff at defendant's request reported that he found no signs of malingering. Rather, the psychiatrist stated that plaintiff's impairment "is a valid disabling illness, no matter how obscure it might be to demonstrate." (TR. 299.)

Thus the decision of the hearing examiner must be reversed. This raises the question whether the court should order the defendant to grant the appropriate benefits, or whether the case should be remanded for further proceedings. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1964), allows for either course without indicating when one, rather than the other, would be appropriate.

■ However, some standards can be gleaned from the decided cases. Remand for further administrative proceedings is the proper course where the hearing examiner has applied an incorrect standard of law and where it is possible that, after application of the correct standard, denial of benefits would be appropriate. See Tigner v. Gardner, 356 F.2d 647 (5th Cir. 1966) (availability of jobs to applicant); Frith v. Celebrezze, 333 F.2d 557 (5th Cir. 1964) (failure to make finding on issue of pain); Goodwin v. Gardner, supra (same). Such is the case here.

■ Accordingly, the case is hereby remanded to the Secretary of Health, Education and Welfare for granting or denial of benefits after findings on the issues of the availability of jobs to plaintiff and the credibility of her allegations of pain.